**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE**

**CRIMINAL ACTION NO. 7:25-CR-006-DLB**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                                   **SENTENCING MEMORANDUM**

**CORTEZ T. HARRIS**                                              **DEFENDANT**

\* \* \* \* \*

In his sentencing memorandum[R. 24], Cortez Harris swings for the fences. Despite a guideline range of 70 to 87 months, Harris asks the Court to sentence him to time served, which amounts to 9 months of incarceration and an 87% variance from the bottom of his guideline range. To be sure, there are mitigators in Harris's case, but none of them come close to approaching a justification for his sentencing request. For the reasons set forth in this sentencing memorandum,[1] as well as those that will be articulated during the argument at sentencing, the United States opposes the sentencing recommendation of Harris.

As is known to this court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which is "the starting point and

---

[1] Consistent with the Court's scheduling order, it would normally be the practice of the undersigned to file a sentencing memorandum only when there is a contested sentencing objection. As reflected in the Addendum to the PSR, there are technically no pending objections. However, the nature of Harris's August 15, 2025 letter, which purports to set forth objections, including a request for a four-level reduction under U.S.S.G. § 5H1.11, injects some ambiguity into the proceedings. Therefore, out of an abundance of caution and to preserve the right to argue against the recommendations of Harris, the United States files this sentencing memorandum, the arguments of which will be supplemented during the sentencing hearing.

the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  From there, "the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id*. at 49-50.  "If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Id*. at 50.  The Supreme Court has found it, "uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id*; see also, *United States v. Stall*, 581 F.3d 276, 281–82 (6th Cir. 2009) (noting that, "the greater the district court's variance, the more compelling the evidence must be.").

So what does Harris advance as the significant justifications that are proportional for the enormous departure he seeks from the guidelines?  First, he essentially argues that the nature and circumstances of the case are mitigating because he was merely transporting drugs for someone else.  There are, of course, circumstances in which transporting drugs from one place to the other for money would be a federal crime, but not really that serious of one.  For example, had Harris been running an eight-balls of methamphetamine from Salyersville to Paintsville for his friend, the offense seriousness would be pretty low.  But that is not what was going on here.  When he was traffic stopped in Kentucky, Harris had in his possession 843 grams of actual methamphetamine. [PSR Paragraph 7].  That is nearly 17 times the amount of methamphetamine necessary to cross the threshold (50 grams actual methamphetamine) of a Class A, federal felony, that is the most serious methamphetamine offense provided for under federal law and that is punishable for a term of no less than 120 months and up to life imprisonment.  It

2

corresponds to a base offense level of 34 in a guideline scheme that only goes to a 38. [PSR Paragraph 12]. Moreover, Harris had transported this aggravated quantity of methamphetamine over four hundred miles and over six hours from Detroit, Michigan, to Salyersville, Kentucky. Interstate, aggravated, methamphetamine trafficking of this quantity of methamphetamine is an unquestionably serious offense. The sentence recommended by Harris does not adequately account for (and, indeed, trivializes) the nature and circumstances of this offense and its seriousness. Relatedly, such a sentence would not operate as a deterrent – general or specific. One thousand dollars for a trip to Kentucky would surely seem more tempting to Harris and other Detroit drug dealers if the countervailing risk were only nine months as opposed to 70 to 80 months. This reduction was also operate to create an unwarranted sentencing disparity.

Harris also supports the requested variance by making reference to his low criminal history. Again, there can be no doubt that the absence criminal history is to mitigating for a defendant.[2] But the Sentencing Commission has not overlooked this. *See, United States v. Warren*, 771 F. App'x 637, 642 (6th Cir. 2019) (in which the Sixth Circuit rejected a criminal-history-based justification for a disparate sentence since "his criminal history was already incorporated into the Guidelines-recommended sentence," the variance was "inconsistent with the need to avoid unwarranted sentence disparities."). The guidelines account for Harris's criminal history in his criminal history category of I,

---

[2] It is not technically correct to say that Harris has no criminal record. In 2013, Harris was convicted of domestic violence and sentenced to 2 years unsupervised probation, which he violated in 2014. [PSR Paragraph 24]. The fact that, until 2024, Harris was recreationally using methamphetamine, cocaine, and designer drugs (the possession of which would constitute criminal conduct) also somewhat undermines an argument by Harris that he was a completely law-abiding citizen until making one mistake on January 17, 2025.

3

which no one can receive unless they have less than two criminal history points. The safety valve also lowers the sentence and breaches the mandatory minimum only for defendants with a low criminal history. Finally, recent changes to the guidelines have added a further two-level benefit for those who qualify as zero-point offenders. As the beneficiary of these guideline reductions, Harris can hardly complain that his low criminal history has not been accounted for such that an 87% variance is necessary.

Finally, Harris argues that he is, "entitled to an adjustment under USSG 5H1.11 of -4 points." [Objection Letter]. However, a close look at U.S.S.G. § 5H1.11 reveals that it *entitles* no one to anything. Prior to November 1, 2010, USSG § 5H1.11, stated that, "[m]ilitary, civic, charitable, or public service; employment-related contributions; and similar good works are not ordinarily relevant in determining whether a departure is warranted." *United States v. Reilly*, No. CIV.A. 5:12-7238-DCR, 2013 WL 1320769, at *7 (E.D. Ky. Mar. 29, 2013). Thereafter, the provision was amended to its current form, which provides that, "[m]ilitary service *may* be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is *present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines*." USSG § 5H1.11 (emphasis added). Taking a balanced view of the enhancement, the Sixth Circuit has recognized that, "although '[o]ur Nation has a long tradition of according leniency to veterans in recognition of their service,' *Porter v. McCollum*, 558 U.S. 30, 43, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (per curiam), awarding a downward departure based solely on military service is not automatic." *United States v. Dais*, 559 F. App'x 438, 449 (6th Cir. 2014) (citing U.S.S.G .

§ 5H1.11).  As one other district court has put it, consistently with the guidelines, "military service does not support a downward departure absent exceptional circumstances."  *Onyekaba v. United States*, No. 1:10-CR-202-RWS-RGV, 2015 WL 5737327, at *4 (N.D. Ga. Sept. 30, 2015).  Though Harris sets forth his military service, he provides no supportive case law to the effect that he meets the threshold for a departure under U.S.S.G. § 5H1.11.  The closest case that the United States could find is *United States v. Boucher*, 937 F.3d 702, 711 (6th Cir. 2019), in which the defendant tackled his neighbor, United States Senator Rand Paul.  The district court sentenced the defendant to 30 days in prison, which was an eight-level decrease and 95% variance from the defendant's guideline range of 21 to 27 months.  The Sixth Circuit found this sentence to be substantively unreasonable and noted that many of the grounds relied upon by the district court were disfavored.  However, the Sixth Circuit went on to recognize that, "[t]he lone exception is Boucher's military service, which 'may be relevant' under the Guidelines if it is 'present to an unusual degree.' USSG § 5H1.11. That was ***arguably*** the case here—Boucher served in the Army for eight years and achieved the rank of Major." *Id.* at 711 (emphasis added).  While *Boucher* cannot be said to definitively settle the matter of whether Harris's military service is sufficiently extraordinary such that it qualifies for USSG § 5H1.11, it does seem to rule out that Harris's military service could support a departure to the extent sought by Harris.

Nothing in this sentencing memorandum is intended to minimize the Harris's military service, the dangers he has experienced, or the respect that he is owed as a veteran.  In its own recommendation to be made at sentencing, the United States intends

to consider the military service as a mitigating fact under 18 U.S.C. § 3553(a).  However, Harris has not shown that his military service qualifies him for a departure under U.S.S.G. § 5H1.11, let alone a four-level departure or (in combination with any other factor) an 87% variance below his guideline range.  For these reasons, as well as those to be advanced at the sentencing hearing, the United States opposes a departure under USSG § 5H1.11 as well as the time-served sentence recommended by Harris.

Respectfully submitted,

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

By:    s/ *Andrew H. Trimble*                     .
Assistant United States Attorney
601 Meyers Baker Rd., Suite 200
London, KY 40741
(606) 330-4838
Andrew.Trimble@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2025, the foregoing was electronically filed through the CM/ECF system, which will send notice of the filing to all counsel of record.

s/ *Andrew H. Trimble*
Assistant United States Attorney

6